UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x
NEW YORK SHIPPING ASSOCIATION, INC., :
on behalf of its members, and the INTERNATIONAL :
LONGSHOREMEN'S ASSOCIATION, AFL-CIO, on behalf :
of its members and affiliated locals in the Port of New York : **ECF CASE**
and New Jersey, :
 : **COMPLAINT**
                                         Plaintiffs, :
 : Civil Action No.:
                -against- :
 :
WATERFRONT COMMISSION OF NEW YORK :
HARBOR, :
 :
                                    Defendant. :
------------------------------------------------------------------------- x

      Plaintiff New York Shipping Association, Inc. (NYSA), on behalf of its members, and Plaintiff International Longshoremen's Association, AFL-CIO (ILA), on behalf of its members and affiliated locals in the Port of New York and New Jersey (NY-NJ Port), by their respective attorneys, as and for their Complaint, respectfully allege as follows:

### JURISDICTION

      1.    This is an action for declaratory and other appropriate relief brought by Plaintiffs under 28 U.S.C.A. §§ 1331 and 1337 (West 2006).

      2.    This Court has federal-question jurisdiction over this action pursuant to 28 U.S.C.A. § 1331 (West 2006) in that (1) the Waterfront Commission Act (WCA), *see* N.Y. UNCONSOL. LAWS §§ 9801 – 9937 (McKinney 2002 & Supp. 2014); N.J. STAT. ANN. §§ 32:23-1 – 32:23-121 (West 1990 & Supp. 2014), which is the enabling statute for Defendant Waterfront Commission of New York Harbor (Commission), was approved by an Act of Congress, *see* Pub. L. No. 252, 67 Stat. 541 (1953), and is, therefore, federal law, and (2) this action involves questions relating to this federal law.

**VENUE**

3.       This Court is one of proper venue pursuant to 28 U.S.C.A. § 2201 (West 2006) and 28 U.S.C.A. § 1391(b) (West Supp. 2014), since the Commission does business in and may be found in this district and the Commission's determination at issue in this action was issued in this district.

**PARTIES**

4.       Plaintiff NYSA is a New York, not-for-profit, incorporated membership association with its principal office located at 333 Thornall Street, Suite 3A, Edison, New Jersey 08837.  NYSA is an association of marine terminal operators, stevedore companies, and ocean carriers engaged in international trade and commerce in the NY-NJ Port.  NYSA negotiates and administers collective bargaining agreements establishing the terms and conditions of employment of longshore workers represented by Plaintiff ILA.

5.       Plaintiff ILA is an unincorporated association and labor organization which represents employees in an industry affecting commerce.  Its principal office is located at 5000 West Side Avenue, North Bergen, New Jersey 07047.  The ILA is the exclusive collective-bargaining representative certified by the National Labor Relations Board for all longshoremen and other waterfront workers employed by NYSA's members.  The ILA, on behalf of its affiliated locals, negotiates, enters into, and administers with NYSA the NYSA-ILA Collective Bargaining Agreement (NYSA-ILA CBA), which prescribes the terms and conditions of employment for longshore workers in the NY-NJ Port.

6.       Defendant Commission is a body corporate and politic created in 1953 by Section 1 of Pub. L. No. 252, 67 Stat. 541, which was enacted by Congress to "grant[] the consent of Congress to a compact between the State of New Jersey and the State of New York known as the

Waterfront Commission Compact, and for other purposes." The Commission has its headquarters at 39 Broadway, 4th Floor, New York, New York 10006.

## THE WATERFRONT COMMISSION COMPACT

7. In 1953, the States of New York and New Jersey each adopted laws that would form the Waterfront Commission Compact ("Compact"), Pub. L. 252, ch. 407, sec. 1, 67 Stat. 541 (Aug. 12, 1953).

8. The consent of Congress was necessary for the Compact to go into effect. Without the consent of Congress, the 1953 laws of New York and New Jersey cited above would have been ineffective because of the prohibition of Article I, Section 10 of the Constitution of the United States, commonly known as the Compacts Clause.

9. As a result of Congressional consent in the form of Pub. L. No. 252, 67 Stat. 541 (1953), the Compact constitutes federal statutory law for purposes of federal question jurisdiction.

10. The Compact empowers the Commission to maintain a register of individuals eligible for employment on the waterfront and to remove from the register, or decasualize, in compliance with standards established by the Commission individuals who do not apply regularly for work. *See* N.Y. UNCONSOL. LAWS §§ 9827 — 9838 (McKinney 2002); N.J. STAT. ANN. §§ 32:23-27 — 32:23-38 (West 1990).

11. To assure unfettered collective bargaining, the Compact includes Article XV, entitled "Collective Bargaining Safeguarded," which contains two provisions that expressly safeguard Plaintiffs' collective-bargaining rights.

12. Article XV, Section 1 of the Compact states:

> This compact is not designed and shall not be construed to limit in any way any rights granted or derived from any other statute or any rule of law for employees to organize in labor organizations, to bargain collectively and to act in any other way individually, collectively, and through labor organizations or other representatives of their own choosing.

67 Stat. at 557.

13. Article XV, Section 2 of the Compact states:

> This compact is not designed and shall not be construed to limit in any way any rights of longshoremen . . . . or their employers to bargain collectively and agree upon any method for the selection of such employees by way of **seniority**, experience, regular gangs or otherwise; provided, that such employees shall be licensed or registered hereunder and such longshoremen . . . . shall be hired only through the employment information centers established hereunder and that all other provisions of this compact be observed.

67 Stat. at 557 (emphasis supplied).

14. In the 1964 NYSA-ILA CBA, the ILA agreed to allow reductions in manning because of productivity gains made possible by the new technology of containerization in exchange for management's promise to adopt a Guaranteed Annual Income (GAI) Program to compensate displaced workers.

15. The legislative response to the GAI Program was the adoption in 1966 by each of the States of New York and New Jersey of the closed-register statute, often referred to as section 5-p, *see* N.Y. Unconsol. Laws § 9920 (McKinney 2002); N.J. STAT. ANN. § 32:23-114 (West1990 & Supp. 2014). On its face, the closed-register statute delegated power to the Commission to open and close the longshoremen's register, thereby regulating the size of the waterfront labor force.

16.     In 1999, the Legislatures of New York and New Jersey amended section 5-p to permit controlled openings to include in the register individuals sponsored by stevedore-company employers of longshore workers.

17.     Under the terms of the 1999 legislation, the Commission's sole statutory role is to determine the number of additional workers needed by the industry and to register the workers selected by the employers if these workers have passed criminal background checks administered by the Commission.

18.     Section 5-p expressly provides, "Nothing in this section shall be construed to modify, limit or restrict in any way any of the rights protected by article fifteen of this act."

## COUNT

### Determination 40 Violates Article XV of The Compact

19.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 18, inclusive, of this Complaint, as though fully set forth at length herein.

20.     Generally, industry seniority for longshore workers employed pursuant to the NYSA-ILA CBA is denoted by alphabetical categories.  "G" seniority is held by the most senior longshore workers currently employed in the NY-NJ Port; "V" seniority has been assigned to the longshore workers who first became employed in the industry during the past two years.

21.     On May 11, 2015, pursuant to section 5-p of the Compact the Commission issued its Determination 40, a copy of which is attached as **Exhibit 1**, in which the Commission states that it will initially accept a total of 25 applications for longshore positions to replace those "V" seniority registrants who had abandoned the industry.  Determination 40 further allows the opening of the longshoremen's register for an additional 150 applications in a sequence of 50 applications at a time.

22. Determination 40 assigns "W" seniority to the 150 newly-hired workers, even though Plaintiffs have agreed to assign those workers "V" seniority because they are part of the overall group of new employees recently brought into the industry to fill the shortage of personnel needed to handle the increased cargo volumes in the NY-NJ Port and thus should all be assigned to the same longshore industry seniority category.

23. The Commission assigned "W" seniority to the new workers without consulting Plaintiffs. The Commission's unilateral assignment of seniority is contrary to past practice.

24. Historically, the Plaintiffs have determined through collective bargaining the seniority level that should be assigned to newly-hired workers. Plaintiffs would then advise the Commission of that seniority level, and the Commission would accept it and include in its determination under section 5-p the seniority level established by the Plaintiffs.

25. After receiving a copy of Determination 40, Plaintiffs requested a meeting with the Commission in an effort to have the Commission reconsider its decision to assign "W" seniority to the newly hired workers and to instead assign "V" seniority. That meeting was held on August 17, 2015.

26. The Commission issued a letter on August 28, 2015, in which the Commission informed NYSA that it would not reconsider its decision.

27. The assignment of seniority is a matter of collective bargaining, which Article XV of the Compact prohibits the Commission from usurping or limiting in any way.

28. Plaintiffs are entitled to a declaration that the Commission's attempted assignment of "W" seniority to new workers in Determination 40 exceeds the Commission's statutory authority and is void and of no effect.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request that this Court issue a judgment:

a. Granting the declaratory relief requested in paragraph 28 of the Count;

b. Directing the Commission to amend Determination 40 by striking the eighth decretal paragraphs on page 5 of Determination 40 and removing from Determination 40 any provisions assigning seniority classifications to new registrants;

c. Retaining jurisdiction over this action to the extent necessary to ensure compliance with this Court's orders; and

d. Granting such other and further relief as this Court may deem just and proper.

**Dated:** September 10, 2015

| | |
|---|---|
| THE LAMBOS FIRM, LLP | MARRINAN & MAZZOLA MARDON, P.C. |
| By: s/ Donato Caruso | By: s/ Kevin Marrinan |
| Donato Caruso | Kevin Marrinan |
| James R. Campbell | John P. Sheridan |
| The Lambos Firm, LLP | 26 Broadway, 17th Floor |
| 303 South Broadway, Suite 410 | New York, New York 10004 |
| Tarrytown, New York 10591 | (212) 425-3240 |
| (212) 943-2470 | |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |
| *New York Shipping Association, Inc.,* | *International Longshoremen's Association, AFL-CIO* |

*34541*